**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

JOSE MARIA GARCIA-MARTINEZ,<br>
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,<br>

*Respondent*.

</td>
<td>

No. 16-72940

Agency No.<br>A091-071-827

OPINION

</td>
</tr>
</table>

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 15, 2018
San Francisco, California

Filed April 9, 2018

Before: Ferdinand F. Fernandez, M. Margaret McKeown,
and Julio M. Fuentes,<sup>*</sup> Circuit Judges.

Opinion by Judge Fernandez

---

**\* The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.**

## SUMMARY[**]

### Immigration

The panel granted Jose Maria Garcia-Martinez's petition for review of a decision of the Board of Immigration Appeals, holding that the BIA erred in concluding that Garcia's Oregon theft convictions were crimes involving moral turpitude, and remanded.

Garcia was a lawful permanent resident at the time of his convictions, and the BIA found him removable, under 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct.

The panel noted that the Oregon theft offenses for which Garcia was convicted did not require a permanent taking of property. Therefore, the panel concluded that, at the time Garcia committed the offenses, they were not crimes involving moral turpitude because for many decades the BIA had required a permanent intent to deprive in order for a theft offense to be a crime involving moral turpitude.

The panel observed that in *In re Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), the BIA changed the law by no longer requiring a permanent intent to deprive in this context. However, the panel rejected the government's argument that this new rule should be applied retroactively to Garcia, concluding that the balance of retroactivity factors weighed

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

heavily in his favor: 1) this was not a case of first impression; 2) the decision to abandon the literally-permanent deprivation test was a rather abrupt change in the law; 3) an alien in Garcia's position would rely on the BIA's prior rule; and 4) the new rule would impose a new and severe burden upon Garcia, who would be removed from this country and his family after living here for over thirty years. Accordingly, the panel concluded that Garcia's removal order must be set aside.

## COUNSEL

Lochlan F. Shelfer (argued) and Jeremy M. Christiansen, Gibson Dunn & Crutcher LLP, Washington, D.C., for Petitioner.

Imran R. Zaidi (argued), Trial Attorney; Julie M. Iversen, Senior Litigation Counsel; Stephen J. Flynn, Assistant Director; Chad A. Readler, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Jennifer Lee Koh, Immigration Clinic, Western State College of Law, Irvine, California; Kari Hong, Ninth Circuit Appellate Program, Boston College Law School, Newton, Massachusetts; for Amici Curiae Immigration Law Professors and Clinicians.

**OPINION**

FERNANDEZ, Circuit Judge:

Jose Maria Garcia-Martinez, a native and citizen of Mexico and a lawful permanent resident of the United States, petitions for review of the Board of Immigration Appeals' (BIA) determination that he was removable because he had been convicted of two (actually three) crimes involving moral turpitude (hereafter "CIMT"). *See* 8 U.S.C. § 1227(a)(2)(A)(ii). Those were crimes of theft committed in the State of Oregon. *See* Or. Rev. Stat. § 164.015; *see also* Or. Rev. Stat. § 164.005(1)(a), (2)(a). We grant the petition.

BACKGROUND

Garcia became a lawful permanent resident of the United States on December 1, 1990. Thereafter, he incurred three convictions that are relevant to this petition for review: a conviction on March 8, 2007, for second degree theft in violation of Oregon Revised Statutes section 164.045; a conviction on December 31, 2012, for third degree theft in violation of Oregon Revised Statutes section 164.043; and a conviction on March 7, 2013, for third degree theft in violation of Oregon Revised Statutes section 164.043. All three convictions were based upon guilty pleas.

The Department of Homeland Security (DHS) ultimately alleged that those were CIMTs. As a result, he was removable because he had been convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). On March 15, 2016, in a written decision, the Immigration Judge (IJ) agreed that on the basis

of those convictions, Garcia was removable.  *See id.*  The IJ also denied Garcia's application for cancellation of removal.  *See* 8 U.S.C. § 1229b(a).[1]  On August 18, 2016, the BIA also agreed that Garcia's crimes were CIMTs.  This petition followed.

JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252.

Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions.  *See Kumar v. Holder*, 728 F.3d 993, 998 (9th Cir. 2013); *see also Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014).  Whether a crime is a CIMT is a question of law.  *See Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010).  We review "*de novo* the BIA's determination of purely legal questions, including the BIA's interpretation of the Immigration and Nationality Act." *Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir. 1999).  However, we do so with appropriate deference.  *See, e.g.*, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S. Ct. 2778, 2781–82, 81 L. Ed. 2d 694 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164, 89 L. Ed. 124 (1944); *see also Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013); *Edu v. Holder*, 624 F.3d 1137, 1142–43 (9th Cir. 2010).

---

[1] In Garcia's petition to this court, he does not argue that the BIA erred in determining that he is not entitled to cancellation of removal.  Thus, the issue is not before us.

DISCUSSION

In order to decide if a conviction was for a CIMT we must determine the elements of the crime under the law of the state where a person was convicted. Here, of course, that is the law of the State of Oregon regarding theft. Then, we must see if that meets the definition of a CIMT for purposes of 8 U.S.C. § 1227(a)(2)(A)(ii).

In the State of Oregon, a person is guilty of theft "when, with intent to deprive another of property or to appropriate property to the person . . . , the person: (1) [t]akes, appropriates, obtains or withholds such property from an owner thereof." Or. Rev. Stat. § 164.015. "'Appropriate' . . . means to: . . . Exercise control over property of another, . . . permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property . . . ." *Id.* § 164.005(1)(a). Similarly: "'Deprive' . . . means to: . . . Withhold property of another or cause property of another to be withheld from that person permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to that person . . . ." *Id.* § 164.005(2)(a). Notably, the statutory scheme does not require a permanent taking of the property in question; something less than that will do. In fact, it can be quite a bit less; it can be a mere temporary taking. *See State v. Christine*, 93 P.3d 82, 84, 87 (Or. Ct. App. 2004) (where a van and cell phone were taken for a relatively short time and then abandoned when the thieves changed vehicles, that was enough to constitute theft); *see also State v. Browning*, 386 P.3d 192, 193 (Or. Ct. App. 2016) (holding that "the term 'take' applies to the exercise of dominion or control over property for one's own use . . . , regardless of whether the dominion or control is intended to

be temporary or permanent"). The Oregon statutory provisions in question are "indivisible." *See* Or. Rev. Stat. § 164.025; *State v. Cox*, 82 P.3d 619, 623–24 (Or. 2003).

Because resolution of this case turns on whether Garcia committed CIMTs, we must determine if Garcia's thefts in Oregon were CIMTs. At the time he committed them, they were not CIMTs because for many decades (at least since 1947[2]) the BIA had held that "a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property."[3] We agreed. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2016) (en banc). At argument, the government also agreed with that assessment, and properly so. In fact, the BIA recently said that was the rule. *See Diaz-Lizarraga*, 26 I. & N. Dec. at 849. But it went on to say more. It declared that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 853. It frankly admitted that it was changing the law, but stated "we conclude that our early jurisprudence does not provide us with good reasons to persist in the rule that moral turpitude requires a taking involving a *literally* permanent intended deprivation." *Id.* And, finally, "to the extent that any of our prior decisions have required a literal intent to permanently deprive in order for a theft offense to be a crime involving moral turpitude,

---

[2] *In re R–*, 2 I. & N. Dec. 819, 828 (B.I.A. 1947); *see also In re P–*, 2 I. & N. Dec. 887, 887 (B.I.A. 1947); *In re H–*, 2 I. & N. Dec. 864, 865 (B.I.A. 1947); *In re T–*, 2 I. & N. Dec. 22, 42 (Op. Att'y Gen. 1944).

[3] *In re Diaz-Lizarraga*, 26 I. & N. Dec. 847, 849 (B.I.A. 2016).

those decisions are overruled." *Id.* at 855. Simply put, the BIA changed the law.

The government, instead, argues that under the new rule Garcia's Oregon crimes are CIMTs because the new rule should be applied retroactively to this case. If the new rule does not apply retroactively, the BIA's decision in this case was in error.[4]

We recognize that the BIA can change its rules retroactively through adjudication,[5] but that authority is not unconstrained. Rather, we must balance the reliance interests of those to whom the new rule will be applied against the mischief, if any, that would be caused if the rule is not so applied. In doing so, we balance a number of "non-exhaustive" factors, that is:

> (1) whether the particular case is one of first impression,
>
> (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law,

---

[4] In fact, in this case a one-judge panel of the BIA did apply what amounts to the new rule. That judge ultimately authored *Diaz-Lizarraga*, but here he jumped the gun a bit.

[5] *See SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S. Ct. 1575, 1580–81, 91 L. Ed. 1995 (1947).

(3) the extent to which the party against whom the new rule is applied relied on the former rule,

(4) the degree of the burden which a retroactive order imposes on a party, and

(5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007). When we do so, that balance weighs heavily in Garcia's favor.

First, to the extent that the consideration is relevant in the immigration context,[6] this surely was not a case of first impression.[7] Seventy years of application of the old rule tells us that. *See Diaz-Lizarraga*, 26 I. & N. Dec. at 849.

Second, on its face, the decision to abandon the literally-permanent deprivation test was a rather abrupt change in the law, to say the least. While there may have been some slight deviation from time to time when the BIA indulged in presumptions about intent in considering the law of a

---

[6] *See Carrillo de Palacios v. Holder*, 708 F.3d 1066, 1072 (9th Cir. 2013); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 521–23 (9th Cir. 2012) (en banc).

[7] *See Miguel-Miguel*, 500 F.3d at 951.

particular state,[8] that does not square well with Oregon law which declares itself to be nondivisible in the theft area. *See* Or. Rev. Stat. § 164.025; *see also Almanza-Arenas*, 815 F.3d at 475. More than that, the BIA did not overturn the requirement that a taking must be literally permanent until *Diaz-Lizarraga* itself. The law was not truly unsettled. *See Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982).

Third, if there were some arcane nuances lurking in some of the BIA's authorities, we do not doubt than an alien in Garcia's position would rely on the BIA's continual affirmation of the rule of literal deprivation which had existed for decades. Indeed we will presume[9] that he was aware of the then existing rule when he pled guilty to the theft crimes in Oregon.

Fourth, there can be little doubt that the change in the rule—the new rule—will impose a new and severe burden[10] upon Garcia, who will be removed from this country and from the proximity of his family after living in this country for over thirty years.

Fifth, we do not vilipend the BIA's interest in treating all aliens uniformly or look upon its interest in removing

---

[8] *See In re Jurado-Delgado*, 24 I. & N. Dec. 29, 33–34 (B.I.A. 2006) (law of Pennsylvania); *cf. In re Grazley*, 14 I. & N. Dec. 330, 333 (B.I.A. 1973) (law of Canada).

[9] *See Miguel-Miguel*, 500 F.3d at 952; *see also INS v. St. Cyr*, 533 U.S. 289, 322–23, 121 S. Ct. 2271, 2291, 150 L. Ed. 2d 347 (2001).

[10] *See Montgomery Ward*, 691 F.2d at 1334; *see also Garfias-Rodriguez*, 702 F.3d at 523.

criminals from our midst with insouciance. However, we do not think those have a great deal of weight in a case like this one where the BIA lived with the preexisting rule for seven decades and, in fact, until just a couple of years ago would have treated Garcia as a person who had not committed CIMTs.

Thus, on balance, the above factors and basic fairness indicate that the changed rule should not be applied in this situation. Rather, for this case, the law should remain as it has been for many decades. In short, Garcia's thefts were not CIMTs, and his removal order must be set aside. Were we at all doubtful about our conclusion, we would take comfort from and be made more confident by a recent decision of the Second Circuit Court of Appeals which, after weighing the same factors, determined that the BIA's new CIMT rule did not apply retroactively. *See Obeya v. Sessions*, __ F.3d __, __, No. 16-3922-ag, 2018 WL 1189417, at *2–5 (2d Cir. Mar. 8, 2018); *see also Lucio-Rayos v. Sessions*, 875 F.3d 573, 578 (10th Cir. 2017) (stating that the new rule "is presumed to apply prospectively only").

Therefore, we will grant the petition and remand.[11]

---

[11] Because the new definition of CIMT does not apply to Garcia, we need not, and do not, decide the constitutional questions raised by the parties. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 846 (9th Cir. 2009). That is, we do not decide whether the whole CIMT provision must be stricken because it is void for vagueness. *See Johnson v. United States*, __ U.S. __, __, 135 S. Ct. 2551, 2560, 192 L. Ed. 2d 569 (2015). Nor do we decide the claim that Congress violated the separation of powers principle when it conferred on the Attorney General the authority to flesh out the meaning of CIMT. *See Mistretta v. United States*, 488 U.S. 361, 371–72, 109 S. Ct. 647, 654–55, 102 L. Ed. 2d 714 (1989).

## CONCLUSION

Perhaps the BIA slumbered for many decades while other authorities were wisely updating the law so that theft offenses would net individuals other than those who intended to literally permanently deprive others of their property, although some of the BIA's umbrageous statements along the way showed that it stirred while it slept. In any event, the BIA has changed or updated or revised its rule for the future. Nevertheless, that rule should not be applied to Garcia, who pled and was convicted while the old rule was extant.

Petition GRANTED, and matter REMANDED to the BIA for proceedings consistent with this opinion.