NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

SEP 29 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARTHA GOMEZ PALACIOS; MARIA
BERNAL GOMEZ; ERNESTA BERNAL
GOMEZ,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 21-876

Agency Nos.
A202-063-111
A202-063-112
A202-063-113

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 19, 2023
Phoenix, Arizona

Before: TALLMAN, OWENS, and BADE, Circuit Judges.

Martha Gomez Palacios ("Gomez Palacios"), a native and citizen of Mexico,

petitions for review of the Board of Immigration Appeals' ("BIA") decision

dismissing her appeal of an immigration judge's decision denying her applications

for asylum, withholding of removal, and protection under the Convention Against

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Torture ("CAT").  Two of Gomez Palacios' daughters, Maria de los Angeles Bernal Gomez and Ernesta Bernal Gomez, are derivatives of her asylum application.  We review the BIA's decision for substantial evidence, which is "highly deferential" and requires upholding the BIA's decision unless the evidence "compels" otherwise.  *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (emphasis and citations omitted).  As the parties are familiar with the facts, we do not recount them here.  We deny the petition.

1.	Substantial evidence supports the BIA's denial of asylum for Gomez Palacios and her two daughters.

"To be eligible for asylum, a petitioner has the burden to demonstrate a likelihood of 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  *Id.* at 1059 (quoting 8 U.S.C. § 1101(a)(42)(A)).

Gomez Palacios sought asylum on account of her membership in two particular social groups: (1) her familial relationship with her extended family; and (2) "persons who have provided information to authorities investigating cartel members."

For the particular social group of her family, substantial evidence supports the BIA's finding that Gomez Palacios failed to establish that her persecution was on account of her family relationship.  The kidnappers abducted victims who were

not Gomez Palacios' family members, they expressed that they were motivated by their desire to sexually assault female victims and to force the male victims to perform manual labor for the cartel, and such kidnappings are a common occurrence across the part of Mexico where the kidnappings occurred. Thus, a "reasonable adjudicator" could conclude, as the agency did here, that Gomez Palacios failed to establish that her persecution was on account of her family relationship. 8 U.S.C. § 1252(b)(4)(B) (providing that the BIA's findings must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary"). Although Gomez Palacios and nearly twenty members of her extended family were kidnapped by cartel members, that does not compel the conclusion that she and her family were targeted because of their family relationship given the other evidence. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (A petitioner's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground.").

For the particular social group of "persons who have provided information to authorities investigating cartel members," substantial evidence supports the BIA's finding that Gomez Palacios does not have an objectively reasonable fear of future persecution. The BIA noted that Gomez Palacios has family members, including her son, who continue to live in Mexico without incident. *See Sharma*, 9 F.4th at 1066 ("The ongoing safety of family members in the petitioner's native country

undermines a reasonable fear of future persecution.").  And while in separate proceedings some of Gomez Palacios' family members were granted asylum based on this same particular social group, each case is evaluated individually, and these other decisions do not compel the conclusion that the BIA's determination here was unreasonable.

2.    Substantial evidence also supports the denial of withholding of removal for Gomez Palacios.  *See Silva v. Garland*, 993 F.3d 705, 719 (9th Cir. 2021) (setting forth standard for withholding of removal).

For the particular social group of her family, the nexus requirement for withholding of removal is less demanding than the nexus requirement for asylum. While the asylum statute states that the protected ground must be "one central reason" for the persecution, the withholding statute uses only "a reason."  *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017).  Nonetheless, for the same reasons stated above, *supra* pg. 2-3, evidence does not compel the conclusion that Gomez Palacios' familial relationship was "a reason" for her persecution.

For the particular social group of "persons who have provided information to authorities investigating cartel members," "[t]he 'more likely than not' standard for withholding of removal is 'more stringent' than the 'reasonable possibility' standard for asylum, and therefore an applicant who is unable to show a 'reasonable possibility' of future persecution 'necessarily fails to satisfy the more

stringent standard for withholding of removal.'" *Silva*, 993 F.3d at 719 (citation omitted).

3.      Finally, substantial evidence supports the denial of CAT relief for Gomez Palacios.  The evidence does not compel the conclusion that Gomez Palacios will more likely than not be tortured by or with the acquiescence of a public official if removed to Mexico.  *See Sharma*, 9 F.4th at 1067 (setting forth standard for CAT relief).

4.      The stay of removal remains in place until the mandate issues.

**PETITION DENIED**.

*Gomez Palacios v. Garland*, No. 21-876

OWENS, Circuit Judge, dissenting:

I respectfully dissent. I would grant the petition and remand for several reasons.

First, regarding the agency's finding that Gomez Palacios failed to establish past persecution because she did not show a nexus between her kidnapping and the protected ground of her family, I think that the kidnapping of nearly twenty family members from at least two different homes is strong circumstantial evidence that the family was targeted and the kidnapping was not random violence. Neither the Board of Immigration Appeals ("BIA") nor immigration judge ("IJ") addressed the important fact that the family members were abducted from multiple homes.

Second, regarding the agency's finding that Gomez Palacios failed to establish a well-founded fear of future persecution based on her membership in the particular social group of "persons who have provided information to authorities investigating cartel members," I think that the agency failed to adequately consider and distinguish the prior grants of asylum to Gomez Palacios' family members who were kidnapped along with Gomez Palacios and her two derivative daughters.

For example, the record reflects that Gomez Palacios' nephew, Ruben, who was among the kidnapped family members, was granted asylum by the BIA in 2017. There, the BIA concluded that the IJ "committed legal error and clear

1

factual error in determining that [Ruben] does not have a well-founded fear of persecution based on his membership in a particular social group comprised of persons who have provided information to authorities investigating cartel members." The BIA noted that Ruben "and his other family members share the experience of the kidnapping and a dramatic rescue, and they provided statements against and identified some of their kidnappers. . . . [They] had their personally identifiable information and photographs broadcast nationally in Mexico." The BIA stated that "whatever the reasons for the Bernal family's [kidnapping] in January of 2015, the family now faces persecution in Mexico based upon their cooperation with the Mexican authorities." The BIA determined that Ruben had "established at least a well-founded fear that he would be targeted for his family's cooperation in assisting the government prosecute[] these [cartel] members." In addition, the BIA concluded that Ruben had established that the source of his persecution consisted of forces the Mexican government was either unable or unwilling to control because the Mexican government specifically told him that they could not protect him and his family from future attacks.

The record also reflects that Gomez Palacios' daughter, Delia, was granted asylum in 2016 (by the same IJ involved here) "[b]ased upon BIA decision." The BIA's decision for Delia, which can be located on the publicly available Executive Office for Immigration Review ("EOIR") website, indicates that the BIA granted

2

Delia asylum (and reversed the same IJ involved here) for essentially the same reasons that it granted Ruben asylum. In addition, Gomez Palacios' asylum application noted that her son Raul had previously been granted asylum. The BIA's decision for Raul, which can be located on the EOIR website, indicates that Raul was granted asylum in 2016 for essentially the same reasons that Ruben and Delia were, and the BIA reversed the same IJ involved here. The same is true for Delia's partner Victor.

The IJ appeared to distinguish these prior grants of asylum to Gomez Palacios' family members who were kidnapped along with Gomez Palacios and her two derivative daughters on the basis of a passing comment from Gomez Palacios' daughter that one of her brothers (i.e., Gomez Palacios' son) had returned to Mexico. During her testimony, Gomez Palacios' daughter, Maria de los Angeles, mentioned that her brother "was detained and he just couldn't tolerate it anymore" and "so he returned back and went with my aunt." But there were no further questions about her brother's return to Mexico; Maria de los Angeles was not asked what her brother's name was, whether he was among the family members kidnapped with Gomez Palacios, or what his experience had been since his return. Nonetheless, the IJ noted that Gomez Palacios' son, "who was also part of the group that was kidnapped," had returned to Mexico, and there was no evidence that he had been harmed upon his return. The BIA likewise noted that

3

Gomez Palacios' "son, who was also kidnapped with [her,] has returned to Mexico and lives safely with an aunt."

However, it is unclear if the son who returned to Mexico was among the group that was kidnapped. It appears that Gomez Palacios had two sons, only one of whom (Raul) was among the group that was kidnapped, and as noted above, Raul was previously granted asylum in 2016, and therefore it was most likely her other son who returned to Mexico. If Gomez Palacios' son who returned to Mexico was not among the group that was kidnapped, he is not similarly situated to Gomez Palacios. Likewise, the aunt and Gomez Palacios' husband, who live in Mexico, are not similarly situated to Gomez Palacios because there is no evidence that they were among the group that was kidnapped.

Finally, from the publicly available EOIR website, it appears that after the IJ's decision here, nine other family members who were kidnapped along with Gomez Palacios and her two derivative daughters have been granted asylum, bringing to thirteen the total number of Gomez Palacios' kidnapped family who have been granted relief.

I urge the Government to use the many tools at its disposal to help Gomez Palacios and her two derivative daughters and address this disparate result.