FOX, J.
 
 *
 

 This is an action for indemnity. The plaintiff in this action, Kenneth Ramsdale, who is not a party to this appeal, obtained a judgment for personal injuries against Schackman and Universal. Universal was required by the judgment rendered on the cross-complaint to hold Schackman harmless from the judgment obtained by Ramsdale and to reimburse Schackman for the necessary and reasonable expenses and costs incurred by Schackman in the defense of the action filed by Ramsdale. Universal has appealed.
 

 The cross-complaint was tried by the court without a jury. The record on appeal consists solely of the clerk’s transcript.
 

 Universal was a California corporation engaged in the business of making motion pictures. Schackman was the owner and operator of an arcade business known as Nugget Arcade located at 522 South Main Street, Los Angeles. On August 21, 1960, Universal and Schackman entered into a written agreement which was on a printed form prepared by Universal. This agreement appears as exhibit A to the cross-complaint. The agreement provided,
 
 inter alia,
 
 that for $350 Schackman would permit Universal to enter the arcade premises for the purpose of filming certain scenes for a motion picture.
 

 Paragraph 4 of said agreement states: “You [Universal] agree to idemnify and hold me [Schackman] harmless from and against all losses, damages, costs and expenses incurred by me because of any injury to property or injury to or death of any person occurring on said property during your use of the property. ’ ’
 

 On September 6, 1960, Universal entered the Schackman premises pursuant to said agreement and on said date Rams-dale entered the premises as an electrician to aid and assist
 
 *855
 
 Universal in the making of the motion picture. The scenes to be filmed at the arcade were to show or to simulate the production’s principal character firing at certain Indian head targets, using one of the shooting gallery’s guns. On said occasion Ramsdale suffered injuries caused by the accidental discharge of one of the shooting gallery’s guns by an employee of Universal while Universal was conducting operations on the premises. Prior to the accident, Universal had been informed by Schackman or his agent that the guns had been unloaded, but Universal did not make any further investigation or take any other precautions.
 

 The court found that Ramsdale’s injuries, which resulted in a verdict of $45,000, were proximately caused by the combined negligence of Schackman and Universal The court also found that the hazard of accidental injury in the shooting gallery was within the contemplation of the parties as one of the most obvious risks against which Schackman sought to be covered.
 

 The court concluded that paragraph 4 of said agreement indemnified Schackman against the losses, damages, costs and expenses incurred and paid by him as a result of the type of accident that occurred to Ramsdale, notwithstanding the fact that the accident was proximately caused by the combined negligence of Universal and Schackman. The court further concluded that hy virtue of said paragraph 4 that Universal should have undertaken the defense of Schackman in the action brought by Ramsdale; that Universal was required to hold Schackman harmless in said action, and that Universal was obligated to reimburse Schackman for legal fees incurred in the amount of $3,500 and costs.
 

 The basic question here presented is whether the indemnification provisions contained in the agreement entered into by Universal and Schackman indemnify the latter against losses and damages proximately caused by the combined negligence of the parties to the agreement.
 

 In order to resolve this question it is necessary to determine the intention of the parties as manifested by the language of their agreement and the circumstances surrounding its execution, assisted by the usual rules of construction.
 

 In paragraph 4 of the agreement Universal agreed to indemnify and hold Schackman harmless “from and against all loss, damages, costs and expenses incurred by [him] because of any injury to property or injury to or death of any person occurring on said property during [Universal’s] use
 
 *856
 
 of the property. ’ ’ Ramsdale was injured while working for Universal in Schaekman’s premises by the accidental discharge of one of the target guns by an employee of Universal. This injury was caused by the combined negligence of both Universal and Schaekman. The court found that the hazard of accidental injury in the shooting gallery was within the contemplation of the parties as one of the most obvious risks against which Schaekman sought to be covered. The court, however, did not determine whether Schaekman’s negligence was passive or active.
 

 Apposite in this factual context is the statement of the court in
 
 Rosendahl Corp.
 
 v.
 
 H. K. Ferguson Co.,
 
 211 Cal.App.2d 313 [27 Cal.Rptr. 56], (hear. den.): “. . . Nevertheless, even if it be assumed, as defendant so strongly insists, that plaintiff was in some way actively negligent, and that plaintiff’s active negligence resulted in the Phillips judgment, this would not necessarily preclude plaintiff from a recovery under the indemnity agreement if the parties intended their agreement to allow such recovery. Here the trial court found that ‘the injury to Phillips was the type of circumstance and result against which the Plaintiff sought to be protected and which was intended by the parties to be covered by the Indemnity and Hold Harmless Clause in their contract. . . .’ ” (Pp. 316-317.)
 

 Although stated in slightly different terms, the court in
 
 Harvey Machine Co.
 
 v.
 
 Hatzel & Buehler, Inc.,
 
 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924], reached the same conclusion on the state of law. At pages 447-448 the court stated: “The question in the present ease, as in
 
 Vinnell Co.
 
 v.
 
 Pacific Elec. Ry. Co.,
 
 52 Cal.2d 411 [340 P.2d 604], is whether such an indemnity clause operates to exculpate the indemnitee from the consequences of its own breach of duty where the clause does not expressly state that the damage so caused is intended to be included in the coverage of the clause. The question is one of interpretation of contracts. If it can be determined that the parties intended by their agreement to protect the indemnitee against claims of damage caused by any or even all types of negligent conduct on its part, such an agreement would effectively accomplish that purpose.
 
 (City of Oakland
 
 v.
 
 Oakland etc. School Dist.,
 
 141 Cal.App.2d 733, 739 [297 P.2d 752]; anno., 175 A.L.R. 8, 144-149.)” The court further stated at page 449: ‘ ‘ Throughout the opinion [referring to the
 
 Vinnell
 
 case], however, it is manifest that it is the intent of the parties which the court seeks to ascer
 
 *857
 
 tain and make effective. Where, as in the present ease, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself. ’ ’ In
 
 Harvey,
 
 the court emphasized the importance of a “realistic approach” to this type of problem. Its statement on that point is particularly apposite in the instant case. At page 448 the court made this comment: “The situation here presented, where Harvey contracted for the complete construction of its plant and exacted from the defendants, and through them, from the subcontractors, hold harmless and indemnification clauses in the case of injuries to the defendants’ employees, requires a realistic conclusion that the parties knowingly bargained for the very protection here in issue. Where, as in the ease at bar, the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered. This realistic approach cannot be sacrificed to the formalism of rules of construction where the circumstances are inconsistent with the need of an application of such rules in order to determine the parties’ intentions. ...”
 

 In
 
 Safeway Stores, Inc.
 
 v.
 
 Massachusetts Bonding & Ins. Co.,
 
 202 Cal.App.2d 99 [20 Cal.Rptr. 820] (hear. den.) the court made this significant statement relative to the intention of the parties: “. . . The parties knew that Safeway retained general supervisory authority over the end result, as for example the power to issue change orders or to order the removal of defective materials. King on the other hand agreed to be responsible for constructing the building in a workmanlike manner. In our view, the parties contemplated that King might violate his obligations in this respect and cause the very accidents and loss which occurred. It must be concluded that the parties intended to provide for protection to Safeway for risks occurring during the construction and that the damage and loss resulting from such construction were within the contemplation of the parties.” (P. 113.)
 

 In
 
 Indenco, Inc.
 
 v.
 
 Evans,
 
 201 Cal.App.2d 369 [20 Cal.Rptr. 90] (hear. den.), in considering the question as to whether. the .indemnity provisions of the contract included the indemnitee’s negligence the court stated: “. . . Indemnity agreements, like other contracts, must be so interpreted as to
 
 *858
 
 give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful (Civ. Code, § 1636).” (P. 374.)
 

 Finally, on this point, “A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.” (Civ. Code, § 1647.)
 

 Applying these principles to the factual picture of the case at bench, we reach the conclusion that the judgment must be affirmed.
 

 Here, as pointed out by Mr. Justice White in the
 
 Harvey Machine Company
 
 case, “The question is one of interpretation of contracts,” and “that it is the intent of the parties which the court seeks to ascertain and make effective. ’ ’
 

 In the agreement, Schackman is indemnified against “all loss, damages, costs and expenses” incurred by him “because of any injury to property or injury to or death of any person occurring on said property” during its use by Universal. Plainly, the language is broad enough to protect Schackman against claims of damage caused by any or even all types of negligent conduct on his part if it is determined that the parties intended by their agreement such a result. (See
 
 Harvey Machine Co.
 
 v.
 
 Hatzel & Buehler Inc., supra,
 
 p. 447.)
 

 In examining the surrounding circumstances to determine the intention of the parties as to the scope of the indemnity paragraph, a very important factor to consider is whether the injury in question arose from a risk contemplated by the parties to be included in the coverage in said paragraph. A very persuasive factor on this point is the trial court’s finding that “the hazard of accidental injury in the shooting gallery was within the contemplation of the parties as one of the most obvious risks against which defendant Schackman sought to be covered.” This factor of contemplated risk was examined and used by the courts in
 
 Ha/rvey, Safeway
 
 and
 
 Bosendahl
 
 in determining that the indemnification provisions contained therein embraced negligence of the indemnitee. Consequently, it is reasonable to conclude that the parties intended to provide for protection for the very type of injury here involved.
 

 Another important factor is that the contract containing the indemnification paragraph was a printed form prepared by Universal. If' Universal intended to exclude from the coverage of the indemnification paragraph injuries partially caused by Schackman’s negligence, it would have been a simple matter for it to have so stated in the document.
 

 
 *859
 
 Furthermore, when the fact that Schackman received only $350 for the use of his business premises is weighed against the virtually unlimited liability to which he might have been subjected in the event Ramsdale had been killed or others also injured while Universal was carrying on its operations on his premises, it would seem reasonable that the parties intended that Schackman be indemnified against all such loss, damages, costs and expenses.
 

 Universal relies heavily on
 
 Goldman
 
 v.
 
 Ecco-Phoenix Elec. Corp.,
 
 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377]. It is true there is some language in that case which, when examined apart from the factual context in which it arose, seems to support Universal’s position. However, when the facts of the
 
 Goldman
 
 case are thoroughly analyzed, it is clear that it is consistent with
 
 Harvey
 
 and the other cases cited, and does not require a determination that Schackman is not entitled to indemnification.
 

 Respondent requests that if the judgment is affirmed, either this court receive testimony as to the attorneys’ fees that should be awarded counsel for respondent for -representing him on this appeal or remand the case to the superior court for this purpose. We believe the latter procedure is more appropriate. (See
 
 Richard
 
 v.
 
 Degen & Brody, Inc.,
 
 181 Cal.App.2d 289, 300 [5 Cal.Rptr. 263].)
 

 The judgment is affirmed.
 

 The motion for counsel fees on appeal may be filed within 30 days from the date of the filing of the remittitur.
 

 Herndon, Acting P. J., and Fleming, J., concurred.
 

 *
 

 Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.