[Civ. No. 13896. Third Dist., Oct. 24, 1974.]

COUNTY OF SAN JOAQUIN et al.,
Cross-complainants and Respondents, v.
STOCKTON SWIM CLUB, Cross-defendant and Appellant.

970

COUNSEL

Albert E. Cronin, Jr., for Cross-defendant and Appellant.

Carroll, Burdick & McDonough, Steven Alan Beilock, Eliassen, Postel & Mee, Roger G. Eliassen and Mayall, Hurley, Knutsen, Smith & Green for Cross-complainants and Respondents.

OPINION

**FRIEDMAN, J.**—Under statutes authorizing joint exercise of powers by public agencies (Gov. Code, §§ 6500-6514), the City of Stockton (City) Stockton Unified School District (School District) and County of San

Joaquin (County) entered into a contract for the coordinated operation of public recreational facilities in the Stockton Metropolitan area. The contract provided for the establishment of an agency designated as Stockton Metropolitan Park and Recreation Commission (Commission) as the program's operating agent. Commission consists of seven persons designated according to a procedure described in the contract.

The Commission operates direct recreational programs and also permits the publicly owned recreational facilities under its control to be operated by sponsoring organizations. The Stockton Swim Club (Swim Club), a nonprofit corporation, was established as such a sponsoring organization by a group of parents who wanted their children to receive a higher level of training in swimming and diving than that supplied by the Commission's direct programs. In 1966, as in previous years, Swim Club signed an application and contract for the use of certain swimming pools, including Stagg Pool which was owned by the Stockton Unified School District. The contract was on a standard form supplied by the Commission. It included a clause wherein the sponsoring organization agreed to hold the public agencies "free and harmless from any loss, damage, liability, cost or expense that may arise during or be caused in any way by such use or occupancy of the property."

In January 1967 Janice Arellano, an 11-year-old girl who belonged to the Swim Club, was seriously injured while using a diving board at Stagg Pool. She brought a personal injury action against Swim Club, Commission and the three public entities which had formed the commission, alleging defective condition of the facilities, negligent supervision and negligent rescue activities. The case went to trial before a jury. During the trial, the plaintiff dismissed her action against the public agencies for dangerous condition of the property and for negligent rescue. The jury returned a verdict in favor of all defendants.

Meanwhile, the City, County and School District and the Commission had tendered the defense of the Arellano suit to Swim Club, which rejected the tender. The public agencies cross-complained against Swim Club, seeking indemnification for any judgment and for expenses of defending the lawsuit. After the verdict the court heard the issues presented by the cross-complaint and rendered findings and a judgment against Swim Club for defense expenses (including attorney fees) incurred by the County, School District and Commission in the Arellano lawsuit. The City had dropped its indemnification claim on the ground it had incurred no expense. Swim Club appeals from the indemnification judgment.

■ On appeal Swim Club attacks a trial court finding (really a dis-

guised conclusion of law) declaring that Commission was a legal entity empowered to sue and be sued. Government Code section 6506 provides that the parties to the agreement may establish an agency or *entity* to conduct the activity provided by the agreement. Government Code section 6507 declares: "For the purposes of this article, the agency is a public entity separate from the parties to the agreement." Government Code section 6508 declares that if the agency is not one of the parties but is a public entity, commission or board established pursuant to the agreement and if it is authorized, in its own name, to enter into contracts, the agency shall have the power to sue and be sued in its own name. In view of these provisions the Commission had the status of a legal entity, was authorized to defend itself in the Arellano suit and to sue Swim Club for indemnification.

Swim Club points to pretrial skirmishes in which the Commission and County urged (and the trial court agreed) that the Commission was not a legal entity. These switches of legal position are of no moment. Swim Club does not claim that it was misled or estopped by the other litigants' change of position. The status of Commission as a legal entity is a matter of law and is not affected by the parties' erroneous contentions in the trial court.

In view of the Commission's status as a legal entity, it is not necessary to decide whether Swim Club, after applying to Commission for use of facilities and agreeing to save Commission harmless, may now escape its obligation by contending that the latter had no juridicial existence.

■ Next, Swim Club argues that Commission did not have authority to demand a hold-harmless agreement as a condition of the grant of use of public property. Public agencies possess not only expressly granted powers but also such implied powers as are necessary or reasonably appropriate to the accomplishment of their express powers. (*City of Compton* v. *Adams,* 33 Cal.2d 596, 598 [203 P.2d 745]; *Skidmore* v. *County of Amador,* 7 Cal.2d 37, 40-42 [59 P.2d 818].) The demand for a hold-harmless agreement as a condition for Swim Club's use of publicly owned property was reasonably appropriate to the exercise of the Commission's authority to permit that use. The demand was within the scope of Commission's implied power.

Citing *Tunkl* v. *Regents of University of California,* 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], Swim Club contends that the indemnification clause is an illegal contract of adhesion. This is not a case where a public entity attempts to exculpate itself from its negligence toward members of the public by exacting a waiver of liability as a condi-

tion to rendering an essential public service. Rather it is an indemnity agreement by which the promisee seeks to enforce the promisor's agreement to indemnify him if and when a third party asserts a claim against the promisee. The latter is not within the class of contracts condemned by the *Tunkl* decision. (*Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40, 48 [41 Cal.Rptr. 73, 396 P.2d 377]; *John E. Branagh & Sons* v. *Witcosky*, 242 Cal.App.2d 835, 838-839 [51 Cal.Rptr. 844].)

■ Swim Club next contends that the general language of the indemnity clause is not sufficiently specific to indemnify Commission from its own negligence or the defective condition of its property. Had the jury (or the trial court in the indemnity proceeding) found negligence or a defective condition of public property, resolution of the indemnity issue would have required interpretation of the contract. (See, e.g., *Price* v. *Shell Oil Co.*, 2 Cal.3d 245, 256 [85 Cal.Rptr. 178, 466 P.2d 722].) The jury impliedly found and the trial court expressly found that none of the defendants in the lawsuit had been negligent. Swim Club does not attack these findings. The issue before the trial court was whether the cross-complainants' expense of defending themselves was within the contract language as a "cost or expense that may arise during or be caused in any way by such use or occupancy of the property." The indemnity award did not depend on negligence or defective property; rather the question is whether the Arellano claim fell within the broad language of the indemnity clause quoted above. The trial court properly held that it did. Swim Club's claim of nonindemnification for negligence and defective property is based on undemonstrated assumptions and represents an extraneous issue.

Without developing the point, Swim Club makes a passing argument that the indemnity clause was not broad enough to cover attorney fees incurred in the defense of a lawsuit based on alleged negligence. Alternatively, Swim Club suggests that award of the full amount of the attorney fees is an "obvious injustice." No authority is cited in support of either proposition. The language of the indemnity clause is sweeping. Defense of the Arellano lawsuit was a consequence of Swim Club's use of the property pursuant to its application and contract. Swim Club offers no interpretive support for full or a partial exclusion of the public agencies' legal fees in defending themselves. Even if a portion of the legal fees was attributable to defense against allegations of independent misconduct, the entire lawsuit lay within the scope of the indemnity clause and Swim Club became liable for its codefendants' legal expenses. (See *Hogan* v. *Midland National Ins. Co.*, 3 Cal.3d 563, 564 [91 Cal.Rptr. 153, 476 P.2d 825]; *Schackman* v. *Universal Pictures Co.*, 255 Cal.App.2d 857 [63 Cal.Rptr. 607].)

In *Schackman, supra,* the appellate court allowed not only attorney fees incurred in defending the third party claim but also attorney fees incurred in the indemnitor's appeal from the indemnity award. Commission seeks a similar allowance of attorney fees on appeal here. Commission did not claim such fees in the trial court; at any rate, the findings and judgment in the indemnity proceeding show neither an award nor rejection of such a claim. The allowance was made in the *Schackman* case without any discussion. We prefer to follow the general rule that the defendant in a contract suit is not liable for his opponent's attorney fees unless the contract expressly provides for it.

Judgment affirmed.

Richardson, P. J., and Puglia, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 18, 1974. Richardson, J., did not participate therein.