**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AGK SIERRA DE MONTSERRAT,
L.P.,

*Plaintiff-Appellee*,

v.

COMERICA BANK,

*Defendant-Appellant*.

No. 23-15290

D.C. No. 2:15-cv-
01280-DAD-DB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted February 13, 2024
San Francisco, California

Filed July 19, 2024

Before: Eric D. Miller, Bridget S. Bade, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge VanDyke;
Concurrence by Judge Miller

# SUMMARY[*]

## California Law / Attorneys' Fees

The panel reversed the district court's award of attorney fees associated with litigating a first-party breach of contract suit enforcing an indemnity provision, and remanded.

The district court determined that Comerica Bank breached its agreement to indemnify AGK Sierra De Montserrat, L.P. (AGK) in two underlying lawsuits and awarded attorney fees incurred in those underlying actions.

In addition, relying on *DeWitt v. Western Pacific Railroad Co.*, 719 F.2d 1448 (9th Cir. 1983), the district court awarded AGK damages for attorney fees associated with the present first-party breach of contract suit enforcing the indemnity provision. The panel held that *DeWitt* was only binding in the absence of any subsequent indication from the California courts that this Court's interpretation was incorrect, and California appellate courts since *DeWitt* have uniformly indicated that first-party attorney fees are not recoverable under an indemnity provision. Accordingly, the panel reversed the district court's award of attorney fees for litigating the present action, and remanded for the district court to determine whether those fees were otherwise recoverable.

Concurring, Judge Miller wrote separately to explain why it was appropriate that the court apply a more flexible

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

standard of intra-circuit stare decisis to questions of state law than to questions of federal law.

## COUNSEL

Reuben A. Ginsburg (argued), Timothy J. Gorry, Jon-Jamison Hill, and Adam M. Korn, Michelman & Robinson LLP, Los Angeles, California; Gregory L. Maxim and Thomas G. Trost, Sproul Trost, Roseville, California; for Plaintiff-Appellee.

Ernest Slome (argued), Lann G. McIntyre, Jeffry A. Miller, and Daniel R. Velladao, Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Frank R. Perrott, Lewis Brisbois Bisgaard & Smith LLP, Sacramento, California, for Defendant-Appellant.

## OPINION

VANDYKE, Circuit Judge:

Following a bench trial, the district court determined that Comerica Bank (Comerica) breached its agreement to indemnify AGK Sierra de Montserrat, L.P. (AGK) in two underlying lawsuits and accordingly awarded damages for attorney fees incurred in those underlying actions.  In addition, the district court, relying on our forty-year-old decision in *DeWitt v. Western Pacific Railroad Co.*, 719 F.2d 1448 (9th Cir. 1983), awarded AGK damages for attorney fees associated with the present first-party breach of contract suit enforcing the indemnity provision.  But *DeWitt* is "only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect," *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983), and California appellate cases since *DeWitt* uniformly indicate that first-party attorney fees are not recoverable under an indemnity provision.  Therefore, we reverse the district court's award of fees for litigating the present action.  We remand for the district court to determine whether those fees are otherwise recoverable.

## I.

In 2005, Westwood Montserrat, Ltd., began developing a residential subdivision in Loomis, California.  Westwood obtained, and subsequently defaulted on, a construction loan from Comerica.  Comerica then foreclosed on fifty-one lots in the development.  Before the foreclosure, Westwood recorded a Declaration of Covenants, Conditions, and Restrictions and a Supplemental Declaration, which reserved certain rights for itself as the declarant.

In 2009, Comerica purchased the fifty-one lots at a trustee's sale, and then in 2010, it agreed to sell the lots to AGRE.[1] The Purchase and Sale Agreement (PSA) included a California choice-of-law clause and an attorney fees provision stating that:

> In the event of any action between Buyer and Seller for enforcement or interpretation of any of the terms or conditions of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable costs and expenses, including without limitation court costs and attorneys' fees actually incurred, as awarded by a court of competent jurisdiction.

After signing the agreement, AGRE was concerned about the possibility of Westwood remaining the declarant despite the foreclosure and sale of the lots, which would give Westwood significant control over development. Comerica and AGRE extended and amended the PSA on several occasions, the last of which required Comerica to revoke the Supplemental Declaration and assign AGK all its rights as declarant. AGRE then assigned the PSA to AGK on June 28, 2010.

Comerica provided the required assignment of rights on June 29, 2010. Because AGK remained concerned about potential litigation arising from Westwood claiming to be the

---

[1] AGRE then formed a limited partnership with Kinetic Homes called AGK (the plaintiff in this case) for the purpose of developing the lots.

declarant, the Assignment of Declarant Rights also included an indemnity provision.  The provision stated that:

> The undersigned agrees to indemnify, defend and hold Successor Declarant harmless from and against any and all loss, liability, claims or causes of action existing in favor of or asserted by any party arising out of the undersigned's position as "Declarant" under the CC&Rs on or before the date first above written.

The parties closed the deal, and Westwood indeed commenced several actions against AGK, which Comerica refused to indemnify.  AGK then sued Comerica for breach of the indemnity provision, and Comerica removed the case to federal court.  Following a nonjury trial, the district court found that the assignment, including the indemnity provision, was a valid and binding contract, and that Comerica breached the contract by failing to indemnify AGK in the suits with Westwood.  That part of the district court's ruling has not been appealed.

The district court also determined that Comerica owed AGK for attorney fees and costs incurred in litigating the present breach of contract action—that is, the action to determine whether Comerica was obligated to indemnify AGK for its litigation with Westwood under the indemnity provision in the Assignment of Declarant Rights.  The district court, relying on *DeWitt*, a 1983 Ninth Circuit case, determined that under California law "costs and attorney's fees for prosecuting an indemnification claim may be included in the indemnification award."  719 F.2d at 1453.  Thus, in addition to the costs AGK experienced from the

Westwood actions, the district court also awarded AGK $1,146,337.24 plus prejudgment interest for costs and fees incurred in prosecuting the indemnity action against Comerica.  The sole issue before us is whether this latter award of fees for litigating the indemnity obligation between the parties was contrary to California law.

## II.

"We review de novo the district court's interpretation of state law."  *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002).  The parties dispute the standard by which we reexamine circuit precedent interpreting state law.  AGK suggests we "must apply binding precedent even when it is clearly wrong."  *Silva v. Garland*, 993 F.3d 705, 717 (9th Cir. 2021).  But that rule applies to precedent interpreting *federal* law, not *state* law.  *See id.* (interpreting federal law).  Precedent interpreting federal law is binding absent a decision of the Supreme Court or our court sitting en banc that "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Interpretation of state law, however, is a different exercise.  There, "[o]ur duty as a federal court … is to ascertain and apply the existing California law."  *Alvarez v. Chevron*, 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008)).  "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."  *Owen ex rel. Owen*, 713 F.2d at 1464 (internal quotation marks omitted).  In other words, we

use our "own best judgment in predicting how the state's highest court would decide the case." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) (quotation omitted). Circuit precedent interpreting state law, therefore, "is only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect." *Alvarez*, 656 F.3d at 932 (quotations omitted).

## III.

Comerica appeals the district court's award of fees incurred by AGK in litigating the present action, arguing that, contrary to AGK's position in the district court, those fees are not covered by the text of the indemnity provision in the Assignment of Declarant Rights. AGK argues that, based on our precedent, first-party litigation costs like these are covered by standard indemnity provisions under California law. AGK also argues that those fees are otherwise recoverable under the attorney fees provision in the PSA. We address each of AGK's arguments in turn.

## A.

As the district court explained, in the 1983 *DeWitt* decision, this court interpreted California law to provide that "costs and attorney's fees for prosecuting an indemnification claim may be included in the indemnification award." *Dewitt*, 719 F.2d at 1453. And in 1992, our court followed *Dewitt*'s interpretation, specifically noting the absence of any indication at that point from California courts that its interpretation was incorrect. *See Jones-Hamilton Co. v. Beazer Materials & Servs.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992).

The two California cases *DeWitt* relied on, however, contained essentially no reasoning, and no subsequent California cases have followed them.  Instead, there have been a half-dozen California cases that have gone the other way, explaining in some detail their reasons for doing so and, in some of the cases, explaining why *DeWitt* or the two cases it relied on are wrong.  Moreover, other California cases make clear that the *DeWitt* rule, if it were the correct interpretation of California law, would combine with other California rules in a way that would work a dramatic change in how indemnity provisions are interpreted in California.  On balance, "subsequent indication[s] from the California courts" strongly suggest that *DeWitt*'s interpretation of California law was incorrect.  *Alvarez*, 656 F.3d at 932 (quotations omitted).  We therefore conclude it does not bind us.

## 1.

To start, *DeWitt* relied on two California appellate cases nearly devoid of reasoning on the issue for which *DeWitt* cited them.  In *DeWitt*, a train conductor who worked for Western Pacific was injured in an accident on a spur line leading to a plant owned by the Flintkote Company.  719 F.2d at 1450.  Flintkote had agreed to indemnify Western Pacific for any liability arising from its failure to maintain the spur line.  *Id.* at 1451–52.  After awarding Western Pacific its attorney fees expended in defending the underlying negligence action between the train conductor and Western Pacific, our court held that Flintkote was also required to pay for Western Pacific's fees and costs incurred in prosecuting the indemnification action directly against Flintkote.  *Id.* at 1452–53.  *DeWitt* cited three cases of the California Courts of Appeal, two that it said supported its rule, *see id.* at 1453 (citing *Schackman v. Universal Pictures*

*Co.*, 255 Cal. App. 2d 857, 863 (1967); *Nicholson-Brown, Inc. v. City of San Jose*, 62 Cal. App. 3d 526, 537 (1976), *overruled on other grounds by Bullis v. Sec. Pac. Nat'l Bank*, 21 Cal. 3d 801, 815 n.18 (1978)); and one that  "seem[ed] to be to the contrary, but … cite[d] no authority," *id.* at 1453 (citing *County of San Joaquin v. Stockton Swim Club*, 42 Cal. App. 3d 968, 973 (1974)).  Our court in *DeWitt* then chose to follow the two cases that it characterized as supporting indemnification for first-party litigation costs.

But in fact, *Schackman* and *Nicholson-Brown* have little to no relevant analysis, while *County of San Joaquin* explained why it declined to include first-party litigation costs in an indemnification award.   First, *Schackman* primarily concerned whether an indemnity provision covered losses caused by the combined negligence of both the plaintiff and the defendant.  255 Cal. App. 2d at 859.  The California Court of Appeal spent only two sentences addressing first-party attorney fees.  *Id.* at 863.  After determining that the indemnity provision indeed covered the underlying negligence judgment, the court noted that "Respondent requests that if the judgment is affirmed, either this court receive testimony as to the attorneys' fees that should be awarded counsel for respondent for representing him on this appeal or remand the case to the superior court for this purpose."  *Id.*  The court concluded that "the latter procedure is more appropriate."  *Id.*  So rather than explaining why the first-party litigation costs were recoverable under the indemnity provision, the court in *Schackman* simply sent the attorney fee question back to the trial court to decide in the first instance.  The court did not address whether such an award would be appropriate, nor did it provide any basis for any such award—whether it be the

indemnity provision, a separate attorney fees provision in the contract, or some statute.  *Id.*

*Nicholson-Brown* is similarly sparse on the relevant question.  It notes that the indemnitee requested remand for the trial court to determine the amount of attorney fees that should be awarded for the costs of the appeal, and, citing only *Schackman*, said that "[i]n cases involving indemnification provisions this has been determined to be the proper procedure."  62 Cal. App. 3d at 537.  So both *Schackman* and *Nicholson-Brown* primarily address the *procedural* question of whether fees should be determined by the trial or appellate court, not the *substantive* question of whether an indemnity provision includes first-party litigation costs.  And neither gives any reason *why* such fees would be appropriate.

*County of San Joaquin*, on the other hand, declined to follow *Schackman*, noting that the "allowance [of fees] was made in the *Schackman* case without any discussion."  42 Cal. App. 3d at 974 (italics added).  Instead, the California court chose "to follow the general rule that the defendant in a contract suit is not liable for his opponent's attorney fees unless the contract expressly provides for it."  *Id.*  It therefore declined to read first-party litigation costs into the indemnity provision, even where "[t]he language of the indemnity clause is sweeping."  *Id.* at 973.

To summarize, *DeWitt* based its interpretation of California law on an arguable two-to-one split, where two cases were without analysis and did not even directly answer the question of whether an indemnity provision covered first-party fees, while the third conformed with the American rule by requiring attorney fees provisions in contract cases to be explicit.  Of course, as the court in *Jones-Hamilton*

reasoned, if this remained the state of California law, we would nonetheless follow *DeWitt*'s questionable reading of California's precedent "in the absence of any subsequent indication from the California courts that our interpretation was incorrect."   973 F.2d at 696 n.4.   But California appellate cases since *DeWitt* decisively and persuasively indicate that attorney fees for prosecuting indemnity actions are not recoverable under an indemnity provision absent specific language allowing for such fees.

## 2.

After *DeWitt*, California appellate courts have uniformly rejected our court's reasoning, instead following reasoning similar to that expressed in *City of San Joaquin*.  In *Hillman v. Leland E. Burns, Inc.* the California Court of Appeal noted the "split of authority," including *DeWitt* on one side, but decided to "follow[] the latter rule" from *City of San Joaquin*.  209 Cal. App. 3d 860, 869 (1989).  It explained that "[a]n attorney fees provision would have been the proper subject for negotiation between the parties and possible inclusion in the indemnity agreement; but we decline to add, in the guise of interpretation, a provision which is not there."  *Id.* at 870.

In *Otis Elevator Co. v. Toda Construction of California*, the court similarly acknowledged the split and determined the "second line of cases represents the better-reasoned authority."  27 Cal. App. 4th 559, 566 (1994).  "Because the indemnity agreement at issue [in *Otis*] did not explicitly provide for attorney fees incurred in pursuing an indemnity claim," the appellee was not entitled to them.  *Id.*

One California court applied this same rule to statutory indemnity provisions in *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096 (2000).  *Jacobus* concerned a statute requiring

employers to indemnify employees for litigation arising from their duties. *Id.* at 1100. After determining that Jacobus was entitled to indemnification by his employer for an underlying sexual harassment suit against him, the court determined that the indemnification statute did not extend to attorney fees incurred in bringing the action for indemnification against the employer. *Id.* at 1104–06. The court analogized to the indemnity contract in *Otis* and followed the "established principle that a prevailing party is not entitled to recover attorney fees in the absence of a specific contract or statute." *Id.* at 1105–06. It "decline[d] to read into the statutory phrase … a specific provision allowing recovery of attorney fees to enforce its indemnification provisions." *Id.* at 1106. The court acknowledged that the Ninth Circuit applied a different rule in *DeWitt*, but it explained that "the California appellate courts have not followed *DeWitt* and have concluded that unless an indemnity agreement specifically provides for attorney fees incurred in pursuing the indemnity claim, the indemnitee is not entitled to such fees." *Id.* at 1105.

*Hillman*, *Otis*, and *Jacobus* reveal a broader rule regarding indemnity provisions in California, which is that such provisions are presumptively about covering costs incurred between one party to the contract and a third party, not about costs incurred between the two parties to the contract containing the indemnity clause. "Generally, indemnity is defined as an obligation of one party to pay or satisfy the loss or damage incurred by another party," and does not include "attorney fees incurred in an action between the parties to the contract." *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600 (2016) (quotation omitted). Only when specific language in the indemnity provision evinces an intent to include first-party attorney

fees is that presumption overcome. *Id*. at 601–05 (detailing examples of such specific language). Based on this presumption, *Alki Partners* similarly determined that the indemnity clause in that contract did not include attorney fees. *Id.* at 606.

Our court has already acknowledged this presumption in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023). There, Apple asserted that an indemnification provision in a contract between the parties required Epic to pay Apple's attorney fees incurred in Epic's suit against Apple. *Id.* at 970. The court acknowledged that "California courts presume" that an indemnity clause "relates to *third party* claims, *not* attorney fees incurred in a breach of contract action *between the parties* to the indemnity agreement itself." *Id.* at 1003 (quoting *Alki Partners*, 4 Cal. App. 5th at 600).

Our court went on to explain that the presumption is rebutted "with language that 'specifically provide[s] for attorney's fees in an action on the contract.'" *Id.* (alteration in original) (quoting *Alki Partners*, 4 Cal. App. 5th at 600–01). In that indemnity provision, Epic agreed to indemnify Apple for fees and costs incurred from Epic's "breach of any certification, covenant, obligation, representation, or warranty in" the rest of the contract. *Id.* at 1004. Because Epic could "not identif[y] a single situation in which a third-party could possibly sue Apple pursuant to" that "breach" clause, the presumption was deemed rebutted, and the indemnity provision was interpreted as covering first-party costs associated with Epic's breach of the contract. *Id.* But that was only because of specific language in that particular indemnity provision that would have been superfluous if it did not apply to first-party costs. We read *Epic Games* as

indirectly acknowledging that the *DeWitt* rule is inconsistent with California law.

**3.**

Finally, *DeWitt*'s holding is undermined by its implications for California Civil Code section 1717. Section 1717(a) provides that:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

The statute then states that "[w]here a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." *Id.* By operation of this statute, most attorney fees provisions in California contracts are reciprocal and apply to all provisions of a contract, even if they are not written that way. So even if parties attempt to write a contractual provision that purports to grant attorney fees to only one party or for only one particular part of the contract, under section 1717 that provision could immediately morph into a comprehensive attorney fees provision that grants all parties to the contract attorney fees if they prevail in any contract dispute.

This has obvious implications for the *DeWitt* rule.  If *DeWitt* is correct that an indemnity provision provides attorney fees for first-party disputes over the indemnity clause, then many such indemnity provisions would automatically be converted into broad, reciprocal attorney fees provisions applying to the entire contract by operation of section 1717.  In decisions issued after *DeWitt*, several California appellate courts have noted this exact problem.

First, in *Appalachian Insurance Co. v. McDonnell Douglas Corp.*, McDonnell Douglas asserted that, though the contract at issue did not contain an explicit attorney fees provision, it contained a broad indemnity provision, which it argued included the present litigation.  214 Cal. App. 3d 1, 42–43 (1989).  Though the court ultimately determined that the indemnity provision did not apply to the litigation at issue, it noted that, had it applied to the litigation, it "might be sufficient to support an award of attorney's fees to McDonnell Douglas." *Id.* at 43.

Similarly, in *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, Myers asserted it was entitled to attorney fees based on a provision in its contract which required Myers to indemnify Interface against claims relating to Myers's performance as a contractor for Interface.  13 Cal. App. 4th 949, 962–64 (1993).  Myers argued that the indemnity provision, which broadly covered "all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work," covered Interface's attorney fees in any first-party litigation between Interface and Myers. *Id.* And because of section 1717, if Interface would have had the right to attorney fees should it have prevailed, then Myers argued it too was entitled to attorney fees if it prevailed. *Id.*

The court rejected this argument.  It explained that "[a]n indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person," *id.* at 968, and "[i]ndemnification agreements ordinarily relate to third party claims," *id.* at 968–69.  To read a general indemnity provision "as covering 'actions on the contract[] would render it inconsistent with the balance of'" the provision. *Id.* at 970 (quoting *Meininger v. Larwin-N. Cal., Inc.*, 63 Cal. App. 3d 82, 85 (1976)).  In short, reading an indemnity provision to include first-party litigation costs would "defeat the purpose of an indemnity agreement," which is "intended to be [a] unilateral agreement[]," not to be made reciprocal by operation of section 1717.  *Id.* at 973.  So, the court held that "[a] provision including attorney fees as an item of loss in an indemnity clause is not a provision for attorney fees in an action to enforce the contract."  *Id.* at 971.

Other cases cited by the parties follow *Myers*'s lead.  *See Carr Bus. Enters., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20, 23 (2008); *Silverado Modjeska Recreation & Park Dist. v. County of Orange*, 197 Cal. App. 4th 282, 310 n.21 (2011); *Rideau v. Stewart Title of Cal., Inc.*, 235 Cal. App. 4th 1286, 1296–97 (2015).  Only where specific language overcomes the presumption, such as in *Epic Games*, and makes the provision applicable to first-party litigation costs is an indemnity provision interpreted that way, and when that happens section 1717 usually makes such a provision reciprocal and applicable to the entire contract.  *See Epic Games*, 67 F.4th at 1004; *see also Carr*, 166 Cal. App. 4th at 21–23 (comparing language in different provisions).  Therefore, the way section 1717 would interact with third-party indemnity provisions if they were

interpreted to include first-party attorney fees also cautions against *DeWitt*'s interpretation of California law.

### 4.

In short, cases since *DeWitt* clearly evince a presumption against reading first-party attorney fees into indemnity clauses, and that presumption reconciles the general purpose of indemnity clauses with section 1717.  Therefore, in our "own best judgment," we conclude the California Supreme Court would not agree with *DeWitt*.  *T-Mobile USA Inc.*, 908 F.3d at 586 (quotation omitted).  Instead, it would likely apply a presumption that indemnity provisions only apply to third-party losses.  This presumption applies to even broad language in indemnity provisions, like "all claims … arising out of or resulting from performance of the Work," *Myers*, 13 Cal. App. 4th at 964, and "all liability" relating to claims by "any person" for injuries "aris[ing] out of, or … in any way connected with, or incidental to the performance of the work under this []contract," *Otis*, 27 Cal. App. 4th at 561 n.1.  Put differently, indemnity provisions that cover "any, all, and every claim which arises out of the performance of the contract deal[] only with third party claims." *Alki*, 4 Cal. App. 5th at 601 (internal citation and quotation marks omitted).

Only much more specific language that clearly evinces a desire to include first-party litigation costs is sufficient to overcome California's presumption.    For example, provisions that might defeat the presumption include those covering "attorney's fees *incurred in enforcing* the indemnity agreement," "all losses *whether or not* arising out of third party Claims," or losses from an "action or suit by or in the right of the corporation to procure a judgment in its favor."  *Id*. at 602–03 (emphases added) (internal quotation

marks and alterations omitted) (quoting *Carr*, 166 Cal. App. 4th at 22–23; *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004); *Wilshire-Doheny Assocs. Ltd. v. Shapiro*, 83 Cal. App. 4th 1380, 1395 (2000)).

Here, Comerica agreed to indemnify AGK against "*any and all* loss … asserted by *any* party *arising out of* the undersigned's position as 'Declarant' …." (emphasis added). This provision contains exactly the type of broad language that is presumed to only apply to third-party costs and fees, and it contains none of the specific language that would indicate an agreement to include first-party litigation costs. We therefore reverse the district court's award of first-party attorney fees pursuant to the indemnity provision.

## B.

AGK argues that this court should alternatively affirm the award of fees based on the attorney fees provision in the PSA. Comerica argues that AGK failed to properly raise this argument in the district court and therefore waived it, and that in any event the attorney fees provision in the PSA did not apply to litigation over the Assignment of Declarant Rights. Because this question was first raised in AGK's answering brief and was not addressed by the district court, we remand for the district court to determine whether the argument has been waived or forfeited and, if not, whether AGK is entitled to first-party attorney fees based on the PSA.

## IV.

Notwithstanding our court's forty-year-old precedent to the contrary, California law presumes that indemnity provisions do not cover the costs of litigation to enforce them. The indemnity provision here does not rebut that presumption, and therefore AGK is not entitled to attorney

fees spent in litigating the present suit based on that provision. We therefore reverse the award of those fees and remand to the district court.

**REVERSED AND REMANDED.**

---

MILLER, Circuit Judge, concurring:

I join the court's opinion in full. I write separately to explain why it is appropriate that we apply a more flexible standard of intra-circuit stare decisis to questions of state law than to questions of federal law.

Generally, a panel of this court is strictly bound to follow circuit precedent. In *Miller v. Gammie*, we recognized a narrow exception to that rule, limited to cases in which "our prior decision [has] been undercut by higher authority to such an extent that it has been effectively overruled." 335 F.3d 889, 899 (9th Cir. 2003) (en banc). For that exception to apply, "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are *clearly irreconcilable*." *Id.* at 900 (emphasis added). As we have repeatedly reaffirmed, "[t]his is a high standard." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)).

Our decision in *Miller* involved a question of federal law, and so have most of the cases applying it. In such cases, the *Miller* rule reflects a balance of the competing demands of adherence to vertical precedent (decisions of the Supreme Court) and horizontal precedent (decisions of this court).

But not all our cases involve questions of federal law. In cases in which state law provides the rule of decision, *Erie*

requires us to apply—or, sometimes, to predict—the decisions of the courts of another sovereign. *See* 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938). More specifically, when tasked with applying state law, we must follow the decisions of the highest court of the State. *Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). And when there is no controlling decision from that court, then, so long as "there is no convincing evidence that the state supreme court would decide differently," we are "obligated to follow the decisions of the state's intermediate appellate courts." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (quoting *Vestar Dev. II, LLC*, 249 F.3d at 960). In other words, the considered decision of an intermediate state appellate court is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *see Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982).

State-law questions do not necessarily call for the same balancing of vertical and horizontal precedent that federal questions can require. Instead, they can implicate a balance between the deference that we owe to state courts on matters of state law and our duty to follow horizontal precedent. We have not provided a clear answer as to how to strike that balance. In particular, our cases do not specify what to do when subsequent decisions of intermediate state appellate courts run contrary to circuit precedent.

On the one hand, *Miller*'s reference to "the relevant court of last resort" might be taken to refer to a state high court, excluding intermediate state appellate courts. 335 F.3d at 900. Similarly, from our post-*Miller* cases establishing that

"some tension" between subsequent authority and circuit precedent is insufficient to justify departing from that precedent, one could infer that the decisions of intermediate state appellate courts—which, at best, can only be predictive of the decisions of state high courts—are insufficient to justify a departure from circuit precedent. *Lair*, 697 F.3d at 1207 (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012)).

On the other hand, we have stated, albeit without explanation, that circuit precedent interpreting state law "is only binding in the absence of *any* subsequent indication from the [state] *courts* that our interpretation was incorrect." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (emphasis added) (quoting *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008)). That statement suggests a more permissive view—that a decision of an intermediate state appellate court could be a sufficient basis on which to depart from circuit precedent on a state-law question. *See In re Watts*, 298 F.3d 1077, 1081–83 (9th Cir. 2002). *But see id.* at 1083–87 (O'Scannlain, J., concurring in the judgment). Although that description of our approach to precedent long predates *Miller*, we have never attempted to reconcile it with the *Miller* rule. *See, e.g.*, *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983).

Today the court correctly adopts the more permissive view, and it declines to follow our holding in *DeWitt v. Western Pacific Railroad Co.* that California law permits an award of first-party attorney's fees in a breach-of-contract action to enforce an indemnity agreement. 719 F.2d 1448 (9th Cir. 1983). Our decision in *DeWitt* is not contrary to any subsequent decision of the California Supreme Court, but, as the court explains, multiple decisions of the California Court of Appeal have made clear that *DeWitt* is not a correct

statement of California law. Indeed, in one such decision, the California Court of Appeal expressly observed that "the California appellate courts have not followed *DeWitt*." *Jacobus v. Krambo Corp.*, 93 Cal. Rptr. 2d 425, 432 (Ct. App. 2000). Because it is our duty "to ascertain from all the available data what the state law is and apply it . . . however much the state rule may have departed from prior decisions of the federal courts," I agree that we should follow the California decisions rather than *DeWitt*. *West*, 311 U.S. at 237.

Adherence to precedent is "a foundation stone of the rule of law," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014), and it "promotes the evenhanded, predictable, and consistent development of legal principles," *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). By allowing a panel to depart from circuit precedent when a subsequent Supreme Court decision has abrogated that precedent, the *Miller* approach recognizes that "the vertical obligation trumps the horizontal obligation." Byran A. Garner et al., *The Law of Judicial Precedent* 38 (2016). And by insisting on a high standard for identifying abrogation—demanding that a subsequent decision be "clearly irreconcilable" with our precedent—it promotes predictability and uniformity within our circuit. *Miller*, 335 F.3d at 900.

But as explained above, the relevant balance is different when it comes to questions of state law. In resolving state-law issues, we cannot achieve predictability and uniformity on our own because we are not the only forum in which parties can litigate those issues. If we were to persist in an approach that intermediate state appellate courts have rejected, we would undermine not only the values underlying *Miller* but also those underlying *Erie*, as we would create opportunities for forum shopping and leave

parties uncertain about what law will govern their primary conduct. *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (describing "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws"); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1267 (9th Cir. 2017) (explaining that "state law should be applied consistently in federal and state courts, a goal that 'would be thwarted if the federal courts were free to choose their own rules of decision whenever the highest court of the state has not spoken'" (quoting *West*, 311 U.S. at 236)). In so doing, we would defeat the purposes that adherence to precedent and deference to state courts on questions of state law advance.

To be sure, we could correct the problem by sitting en banc, but resolving state-law questions is not generally an appropriate use of our limited en banc resources. Likewise, although a state high court could resolve the question, it is an imposition on our state-court colleagues to require a state high court to use its resources, which are also limited, simply to correct our mistakes.

Of course, we should not lightly depart from circuit precedent, even on issues of state law. But it is appropriate for us to do so when decisions of intermediate state appellate courts have shown that we are wrong.